IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 31, 2018 Session

IN RE C.T. ET AL.

**Appeal from the Circuit Court for Union County**
**No. 3477     John D. McAfee, Judge**

_____

**No. E2017-02148-COA-R3-JV**

_____

J.S. (father) appeals the trial court's adjudication that his children C.T. and L.T. were dependent and neglected and severely abused in the care of father and A.T. (mother). Mother, who did not appeal, testified, among other things, that father bought her illegal drugs while she was pregnant, and that she and father abused drugs and alcohol during her pregnancy. Father denied mother's allegations. The twin children were born prematurely and tested positive for opana, an opioid, and oxycodone. The trial court expressly credited mother's testimony and discredited father's. On appeal, father bases his assertion of error solely on his argument that the trial court incorrectly assessed the credibility of the witnesses, and that the trial court should have believed him instead of mother. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Brandon T. Kibert, Tazewell, Tennessee, for the appellant, J.S.

Herbert H. Slatery III, Attorney General and Reporter, and W. Derek Green, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Chidren's Services.

# OPINION

## I.

Mother discovered that she was pregnant in January of 2016. At the time of her discovery, she was living with the presumptive father of the children and not with her husband. DNA testing later confirmed that the presumptive father is in fact the biological father of the children. Father testified that he also learned of the pregnancy in January 2016. Mother admitted that she was addicted to opioid pain medication and alcohol, and had been for years. She abused these substances over the course of her pregnancy. At the dependency and neglect and severe child abuse hearing, mother testified that she and father abused drugs and alcohol together numerous times while she was pregnant. She said that father provided her illegal drugs during that time. On one occasion, father purposefully drove the vehicle she was riding in into a ditch after he had consumed around twelve beers. Mother testified he did that "trying to scare me."

The children were born prematurely on August 1, 2016. They spent their first 23 days in the hospital's neonatal intensive care unit. As noted, they tested positive for opana and oxycodone shortly after birth.

On January 19, 2017, Department of Children's Services petitioned the Union County Juvenile Court to declare the children dependent and neglected and victims of severe abuse by mother and father. After a hearing at which both parents testified, the juvenile court granted the petition. At the end of the hearing, the juvenile court specifically found mother's testimony to be credible and true. Father appealed the decision to the trial court. Mother did not. At the trial court hearing, mother did not dispute that the children were dependent and neglected, and had been severely abused in her care by her drug use during pregnancy.

After hearing both parents' testimony, the trial court entered an order finding, in pertinent part, as follows:

> The Court finds the mother's testimony to be more credible to the father, and the Court gives more weight to the mother's testimony tha[n] the father's testimony, and the Court finds the mother's version of events [is] true, and not the father's version of events.

\* \* \*

The parents both abused drugs together on multiple occasions while the mother was pregnant with the children, knowing the mother was pregnant, and knowing that the prenatal drug abuse was likely to cause a serious bodily injury to the child.

*    *    *

The mother testified in March of 2016 the parents snorted 20mg o[f] Opana together.

Later, the parents bought two pills in Clinton and crushed them and cooked them. They both injected them intravenously.

Later, the parents took Hydrocodone by mouth. They broke them into two pieces and shared them.

Later, about a month prior to the children's birth, the father took the mother to a drug dealer. They picked the dealer up and drove him to another dealer and purchased a 40mg Opana. They dropped the first dealer back off and went back to the mother's house and crushed and snorted the pill together.

The parents both testified they drank alcohol together on multiple occasions during the pregnancy.

The mother testified that on one occasion during the pregnancy, the father drank about a twelve pack of Natural Ice beer, and then drove with her in the car with him.

The father testified that, during the pregnancy, he witnessed the mother impaired on drugs on a regular basis. He testified that she would be so impaired on a regular basis that she was "slumped over" and having trouble holding her head up.

Based on these findings, the trial court concluded,

> There is clear and convincing evidence that the children were dependent and neglected by the father, under TCA 37-1-102(b)(13)(G), and that the children are victims of severe abuse by the father, under TCA 37-1-102(b)(22)(A), based on the father obtaining drugs for the mother without prescription during her pregnancy with the children; the father abusing drugs without prescription with the mother during pregnancy; and the father knowing that such conduct was likely to cause serious bodily injury to the children.

Father timely filed a notice of appeal.

## II.

Father raises the issue of whether the trial court erred in determining that DCS proved by clear and convincing evidence that the children were dependent and neglected, and severely abused, under father's care.

## III.

We review de novo the trial court's findings of fact in the record with a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review a trial court's conclusions of law under a de novo standard with no presumption of correctness attaching to the trial court's legal conclusions. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

As we recently observed in *In re A.L.H.*, No. M2016-01574-COA-R3-CV, 2017 WL 3822901, at *2 (Tenn. Ct. App., filed Aug. 31, 2017),

> Severe child abuse in a dependency and neglect proceeding must . . . be established by clear and convincing evidence. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. The evidence should produce a firm belief of conviction as to the truth of the allegations sought to be established. In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate

-4-

that the truth of the facts asserted is highly probable as opposed to merely more probable than not.

(Quoting *In re S.J.*, 387 S.W.3d 576, 587 (Tenn. Ct. App. 2012) (internal quotation marks omitted)).

## IV.

Tenn. Code Ann. § 37-1-102(b)(22) defines "severe child abuse" to include the following:

> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death[.]

In this appeal, father does not argue that the trial court's findings, if upheld, would not establish severe child abuse under the statute. His position is based solely on the argument that the trial court's assessment of credibility between him and mother was erroneous.

As father correctly states in his brief, mother testified that he "supplied her with drugs while she was pregnant, abused drugs with her while she was pregnant, and supplied her with alcoholic beverages while she was pregnant." Mother's testimony can be generally summarized by the following question by the trial court, and her answer:

> THE COURT: And, I take it, from your testimony, that the moment that you discovered that you're pregnant, leading up to the pregnancy, it became a known thing that you all would use drugs together, [father] knew you were addicted and that you all continuously used drugs, prescription medications, that you bought from drug dealers or that he would buy from drug dealers throughout your pregnancy; is that correct?
>
> Mother: Yeah.

Mother also described an incident when father was driving with her as a passenger, testifying as follows:

THE COURT: So it's your testimony that shortly after that first initial euphoria, after that [father] could care less whether you were pregnant or not, is that what you're saying?

Mother: Yeah.

THE COURT: And you say that because he showed no interest?

Mother: Well, because he would be drinking and talked to me like crap and – well, we both would be drinking actually and he would be driving us to the store or whatever and he would get mad about something and drive his car off in the ditch to try to scare me, just put me out of the car.

\* \* \*

Q. You testified earlier about him drinking and driving and driving the car off into a ditch to try to scare you?

A. Yeah.

Q. Did that happen during the pregnancy?

A. I was pregnant, yes.

Q. Were you all intoxicated during that time?

A. We were drinking, yeah.

Q. How much did you drink?

A. I had had just a few beers.

Q. How much did he drink?

A. About a 12-pack I would say.

Q. You saw him, witnessed him drink about a 12-pack of beer?

A. Yeah.

Q. And then drive the car with you in it?

A. Yeah.

Q. While you're pregnant?

A. Yeah.

Q. Then an argument ensued, I assume, between the two of you?

A. A little bit.

Q. Your testimony was that he drove the car off into a ditch to try to scare you?

A. Yeah.

Mother stated that father had abused methamphetamines for around "fifteen years or so."

Father denied supplying drugs to mother or abusing them with her during the pregnancy, except admitting that they drank alcoholic beverages on occasion. He testified that he had been in the Army briefly, and was discharged due to testing positive for cocaine and incurring a foot injury. Father denied abusing alcohol or drugs at the time of the hearing, but also said that his "drug of choice" was "methamphetamine."

As already stated, father's appeal is based on his argument that the trial court erred in finding mother's testimony to be more credible than his, and concluding that "mother's version of events [is] true, and not the father's version of events." Father characterizes mother's testimony as "bizarre," "contradictory," and "illogical." As Tennessee appellate courts have stated myriad times, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Stanfield*, No. W2015-02503-SC-R11-CD, 2018 WL 3762174, at *4 (Tenn., filed Aug. 7, 2018) (quoting *State v. Hawkins*, 519 S.W.3d 1, 32 (Tenn. 2017)). "The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear

and convincing evidence to the contrary." ***Gibson v. Bikas***, No. E2017-00883-COA-R3-CV, 2018 WL 1124507, at \*5 (Tenn. Ct. App., filed Feb. 28, 2018). The reasons for this guiding principle are equally well-established. The trial court is able to perceive and assess the facial expressions, body language, and tone of voice of the witness, in addition to the words spoken. By stark contrast, the appellate court is presented with printed words on a page. Consequently, "[w]e defer to the trial court's determinations of witness credibility because the trial judge could observe the witnesses' demeanor and hear in-court testimony." ***Coleman v. Olson***, 551 S.W.3d 686, 694 (Tenn. 2018).

Father's argument that mother's testimony was "illogical" is illustrated by this question, asked in his brief: "why would [father] give [mother] money to purchase drugs, abuse the drugs with her, and later get mad at her for abusing drugs?" The fact that mother testified that father behaved in an irrational way does not necessarily render her testimony irrational. The trial court clearly did not determine it to be such. There is no clear and convincing evidence in the record contrary to the trial court's assessment of credibility.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, J.S. The case is remanded to the trial court for collection of costs assessed below and enforcement of the trial court's judgment.

_____
CHARLES D. SUSANO, JR., JUDGE